**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**GARY LIPKINS**                                                                          **PLAINTIFF**

**vs.**                                            **4:08CV01512-WRW**

**3M COMPANY**                                                                       **DEFENDANT**

<u>**ORDER**</u>

Pending is Defendant's Motion for Summary Judgment (Doc. No. 50). Plaintiff has

responded,[1] and Defendant has replied.[2] For the reasons set out below, Defendant's Motion for

Summary Judgment is GRANTED.

Also pending is Plaintiff's Motion to Substitute Affidavit (Doc. No. 66)[3] which  is

GRANTED.

**I.     BACKGROUND**

Plaintiff Gary Lipkins alleges he was discriminated against on the basis of his race

(African American) when he was terminated by Defendant 3M. The following facts are

undisputed.[4]

3M Little Rock is a mining and production facility. The operation consists of two

separate operating areas – the Arch Street Quarry and the granule plant. Lipkins was employed at

---

[1]Doc. No. 60.

[2]Doc. No. 64.

[3]Defendant has responded at Doc. No. 66.

[4]See Doc. Nos. 3, 52, 61, 61. Disputed facts are noted.

1

the granule plant. He worked for 3M beginning in June 7, 1999, until his termination on July 6, 2007.

3M's Mineral Products Division is subject to the company's safety guidelines. The guidelines include four "Cardinal Rules" of safety, which, if willfully violated, may result in immediate termination of employment.

One of the four Cardinal Rules of safety is that employees must follow all fall protection standards when working at heights.[5] This includes the use of fall protection gear any time there is a risk of falling, including, but not limited to, situations where employees work at heights over six feet.

It is undisputed that on June 26, 2007, Lipkins climbed, without safety equipment, a multi-tier "speed rack" at the plant, reaching a height of approximately twelve feet above the ground. It is also undisputed that Lipkins did not use fall protection gear during the climb, violating the Cardinal Rule.

The plant's disciplinary committee met on June 29, 2007, to discuss Lipkins's Cardinal Rule violation. Several plant leaders were present at the disciplinary committee meeting, including Plant Manager Todd Cantrell, who transferred to 3M Little Rock in January of 2007. The disciplinary committee ultimately recommended terminating Lipkins. Plant Manager Todd Cantrell adopted the committee's recommendation, and Lipkins's employment was terminated on July 6, 2007.

---

[5]Other Cardinal Rules include the use of a Lockout/Tagout procedure when working around an electrical current; compliance with all confined space permitting procedures when working in enclosed or confined spaces; and the use of all required safety devices when working in the plant.

On August 18, 2008, Lipkins filed the pending Complaint, alleging multiple discrimination claims based upon his race.[6]

## II.    INITIAL MATTERS

### A.    Lipkin's Motion to Substitute Affidavit

Lipkins's Motion to Substitute Affidavit is GRANTED. 3M opposes the motion, and generally objects to all of Lipkins's affidavits on grounds that they contain hearsay statements, contradict prior deposition testimony, and contain testimony not based on the declarant's personal knowledge. This issue was the subject of a previous motion to strike Lipkins's affidavits, and I ruled that Lipkins could re-submit his affidavits in better form.[7]

Having reviewed the new affidavits and the pending motion to substitute, I generally agree with 3M that the affidavits continue to contain numerous evidentiary problems. But, I find that most of the challenged declaration testimony has no relevance to any issue that is pivotal to my decision regarding summary judgment. No purpose would be served by assessing, piece-by-piece, the admissibility of testimony that has no bearing on the dispositive issues. However, I will consider 3M's arguments in determining whether relevant evidence meets the requirements of Federal Rule of Civil Procedure 56(e) and whether such testimony is consistent with earlier deposition testimony. With this qualification, Lipkins's Motion to Substitute Affidavit is GRANTED.

---

[6]Doc. No. 1. Lipkins filed an Amended Complaint days later, at Doc. No. 3.

[7]Doc. No. 47.

**B.      Lipkins's Claims**

Lipkins's Amended Complaint alleges four violations of Title VII[8] and its derivative state

laws:

1. Hostile work environment discrimination;

2. Adverse employment action discrimination;

3. Retaliation; and

4. Pattern, practice, and custom discrimination.[9]

Additionally, Lipkins's Complaint alleges that his termination was wrongful in violation

of Arkansas common law.[10]

Finally, Lipkins's Complaint alleges general violations of 42 U.S.C. §§ 1981, 1983 and

1985, and the Arkansas and U.S. Constitutions.[11]

3M requests summary judgment on all of Lipkins's claims. For the reasons set out below,

3M's request is GRANTED and judgment is entered in favor of 3M on all claims.

---

[8]Civil Rights Act of 1964, 42 U.S.C. §§  2000, *et seq.*

[9]Doc. No. 3.

[10]*Id.*

[11]*Id.*

## C.        Claims Dismissed As A Matter of Law

Several claims are dismissed as a matter of law.

First, Lipkins's Title VII pattern and practice claim is DISMISSED as administratively barred.[12] Although administrative remedies are deemed exhausted for all incidents of discrimination that are "like or reasonably related to the allegations of the [administrative] charge,"[13] Lipkins's administrative charge deals solely with allegations of discrimination occurring to Lipkins himself.[14] A claim of pattern or practice discrimination is not "like or reasonably related to" allegations regarding discrimination occurring only to Lipkins.[15] Because Lipkins has failed to exhaust his administrative remedies, any pattern or practice claim under Title VII is barred and must be dismissed for lack of subject matter jurisdiction.[16]

---

[12]Lipkins's Complaint and papers are unclear on whether he intends to present a § 1981 pattern and practice claim. If he does intend such a claim, neither the statistical nor the anecdotal evidence he presents is enough to support that claim, and summary judgment is appropriate. See *Morgan v. United Parcel Serv. of America*, 380 F.3d 459, 466 (8th Cir. 2004).

[13]*Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994) (internal quotes and citations omitted).

[14]Doc. No. 51-5.

[15]See *Young v. Time Warner Cable Capital, L.P.*, 443 F. Supp. 2d 1109, 1123 (W.D. Mo. 2006) (dismissing plaintiff's pattern and practice claims under Title VII and state law civil rights statute for failure to exhaust administrative remedies on that claim).

[16]Similarly, although Arkansas law has no exhaustion requirement, a claim of discrimination must be brought either (1) within one year of the alleged discriminatory action or (2) within ninety days of receipt of a "Right to Sue" letter, whichever is later. A.C.A. §16-123-1. Because Lipkins did not file suit until August 18, 2008, his state law pattern and practice claim is barred by the statute of limitations.

Similarly, Lipkins's Title VII retaliation claim is DISMISSED as administratively barred.[17] The administrative charge fails to make any assertion of retaliation,[18] so this claim is also dismissed for lack of subject matter jurisdiction.[19]

Next, to the extent Lipkins's Complaint alleges violations of 42 U.S.C. § 1983, § 1985, and the Arkansas and U.S. Constitutions, those claims are DISMISSED. First, § 1983 requires state action,[20] but 3M is a private company;  § 1985 involves conspiracy (*i.e.*, requires two parties), but Lipkins  lists only one defendant; and, Lipkins's papers have presented no argument or evidence of additional Constitutional violations.

Finally, as to Lipkins's common law claim for wrongful discharge, Arkansas has declined to recognize such a claim sounding in tort.[21]

Lipkins's two remaining claims to be considered under the summary judgment standard are for hostile work environment discrimination and adverse employment action discrimination.

---

[17]For reasons given above, Lipkins's state law retaliation claims are barred by the statute of limitations.

[18]Doc. No. 51-5.

[19]See *Watson v. O'Neill*, 365 F.3d 609, 614 (8th Cir. 2004) (affirming dismissal of retaliation claim for failure to exhaust administrative remedies because plaintiff made no assertion of retaliatory motive in relation to the alleged retaliatory action); see also *Wedow v. City of Kansas City*, 442 F.3d 661, 673 (8th Cir. 2006) (holding that "retaliation claims are not reasonably related to underlying discrimination claims").

[20]*Youngblood v. Hy-Vee Food Stores, Inc*., 487 U.S. 42, 855 (8th Cir. 2001) (only "state actors can be held liable under Section 1983").

[21]*Wallace v. Sparks*, 415 F.3d 853, 861 (8th Cir. 2005). As for a contractual wrongful termination claim, Lipkins has not pointed out any facts in the record indicating that he was discharged because of an act he did in the public interest, or a causal connection between his termination and that. See *Trotter v. Weyerhaeuser Corp*., No. 08-CV-4005, 2009 WL 1395441 (W.D. Ark. May 18, 2009).

## III.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[22]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[23]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should be granted only when the movant has established a right to the judgment beyond controversy.[24]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[25]  I must view the facts in the light most favorable to the party opposing the motion.[26]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts,

---

[22]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[23]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[24]*Inland Oil & Transp. Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[25]*Id.* at 728.

[26]*Id.* at 727-28.

showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[27]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[28]

## IV.   DISCUSSION

### A.   Hostile Work Environment Discrimination

Summary judgment is granted in favor of 3M on Lipkins's hostile work environment claims.[29]  To establish a hostile work environment claim, Lipkins must establish a genuine issue of material fact that: (1) he is a member of a protected class; (2) he was subjected unwelcome conduct; (3) the conduct was based on his race; (4) the conduct affected a term, condition, or privilege of employment; and (5) employee liability.[30] Actionable conduct must be extreme rather than merely rude or unpleasant.[31] A plaintiff must establish that, objectively, discriminatory intimidation, ridicule, and insult permeated the workplace.[32] Lipkins has failed to demonstrate a genuine issue of material fact that he was subjected to actionable conduct.

---

[27]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[28]*Anderson*, 477 U.S. at 248.

[29]*Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 652 (8th Cir. 2003) ("Claims alleging a hostile work environment under § 1981 are analyzed using the same standards as Title VII claims.").

[30]See *LeGrand v. Area Res. for Cmty. and Human Servs.*, 394 F.3d 1098, 1101 (8th Cir. 2005).

[31]*Id.*

[32]*Rheineck v. Hutchinson Tech., Inc.*, 261 F.3d 751, 756-57 (8th Cir. 2001).

8

Lipkins's response altogether fails to address the issue of harassment. Construing his papers liberally, however, two incidents of harassment may be inferred. First, Lipkins notes an incident in 2000 involving a noose found in the workplace. This event took place seven years before Lipkins's termination, and he admits that he did not personally observe any of the offending items, nor was he subjected to any offending conduct regarding this incident.[33]

The only other event found in Lipkins's papers that implicates racially unwanted conduct is the use of allegedly derogatory names to describe work areas at the 3M Little Rock plant. According to Lipkins, the department where he worked was referred to as the "College Station" plant, allegedly referring to a predominantly black neighborhood where the granule plant is located.[34] Another department, allegedly predominately white, Lipkins says is referred to as "Pleasant Valley" in reference to a neighborhood in Little Rock which he asserts is predominately white.[35] Lipkins's papers indicate that these terms were used mostly by African American workers, including himself.[36]

Even taken as true, Lipkins's allegations do not rise to the level of a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[37] Lipkins has offered no evidence of any racial remarks or conduct directed

---

[33]Doc. No. 61.

[34]*See generally* Doc. No. 64.

[35]*Id*.

[36]See Doc. Nos. 60, 66.

[37]*Palesch v. Missouri Comm'n on Human Rights*, 233 F.3d 560, 567 (8th Cir. 2000) (internal citations omitted).

toward him personally, nor has he alleged that any conduct whatsoever effected a term or condition of his employment. There is no reasonable basis to conclude that a noose found in the workplace seven years before his termination, coupled with alleged periodic use (by himself and others) of the term "College Station" to refer to the granule plant (which happens to be located in an area of town known as "College Station") was sever and pervasive enough to be actionable conduct.

Accordingly, summary judgment is GRANTED and judgment entered in favor of 3M on Lipkins's hostile work environment claims.

**B.     Discrimination**

Summary judgment is also granted in favor of 3M on Lipkins's adverse employment action discrimination claims. Claims of employment discrimination are analyzed under the *McDonnell Douglas* burden-shifting analysis.[38] According to that analysis, Lipkins bears the initial burden of proving a *prima facie* case of discrimination, 3M then has the burden to articulate a legitimate, nondiscriminatory reason for Lipkins's termination, and Lipkins must then show that 3M's articulated reason is untrue and a pretext for discrimination.

Assuming for the sake of summary judgment that Lipkins could satisfy his *prima facie* burden of proof, summary judgment is still appropriate because Lipkins cannot demonstrate an issue of material fact that 3M's articulated nondiscriminatory reason for his termination (the

---

[38]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *McCullough v. Univ. of Ark. for Med. Sci.*, 559 F.3d 855 (8th Cir. 2009). In this case, Lipkins has produced no strong (direct) evidence that racial or ethnic discrimination motivated any alleged adverse employment action against him. In these circumstances, Lipkins must produce sufficient circumstantial evidence of illegal discrimination under the *McDonnell Douglas* scheme. See *Griffith v. City of Des Moines*, 387 F.3d 733, 740 (8th Cir. 2004).

violation of the Cardinal Rule by climbing without protective gear) is a pretext for discrimination.

The record establishes that 3M did have objective criteria in place with respect to terminating employees for violations of the Cardinal Rules. When, as here, there is a basis in fact for the proffered reason for termination (that Lipkins did not use fall protection and that the 3M Cardinal Rules did permit of immediate termination for that violation), Lipkins must demonstrate a material issue of fact that a "prohibited reason more likely motivated the employer."[39] In other words, it is not sufficient for Lipkins to demonstrate that his termination was based on false or incorrect information, or that 3M unfairly imposed safety rules on some employees and not others. Instead, to survive summary judgment, Lipkins must present evidence raising a genuine issue of material fact that 3M's explanation is a pretext for *racial* discrimination.

Lipkins attempts to meet this burden with evidence purportedly demonstrating 3M's disparate treatment of African American and similarly situated white employees.[40] Lipkins also argues that the Cardinal Rules were not uniformly enforced, that Lipkins did not know about the rules, and that there were subjective components to 3M's termination decision.[41] Lipkins's arguments and evidence, however, fail to raise a triable question of material fact as to whether 3M's legitimate nondiscriminatory reason for his termination was a pretext for discrimination.

---

[39]*Wallace v. DTG Operations, Inc*., 442 F.3d 1112, 1120 (8th Cir. 2006).

[40]Doc. No. 60.

[41]*Id.*

Lipkins alleges that he was treated less favorably than similarly situated white employees.[42] Although Lipkins's papers make shotgun arguments to this effect, comparing and contrasting various other employees' disciplinary histories, the burden is rigorous at the pretext stage of the *McDonnell Douglas* burden-shifting framework.[43] Lipkins's disparate treatment arguments must show both that white employees were similarly situated in *all relevant respects* and were treated more leniently.[44] "[W]hen employees have been terminated by different decision makers, it would be rare for them to be considered similarly situated because any difference in treatment may well be attributable to nondiscriminatory reasons."[45]

Lipkins has failed to present sufficient evidence of any particular employee that is similarly situated in all relevant respects to Lipkins. 3M, on the other hand, presents evidence that, under the new leadership of Todd Cantrell (the manager who oversaw Lipkins's termination), only one other employee has violated the fall protection Cardinal Rule, and that he was terminated for that conduct.[46] Lipkins does not dispute this, and instead points to two white employees who, prior to Todd Cantrell's arrival at the plant, were not terminated for violations

---

[42]See *E.E.O.C. v. Kohler Co., 335 F.3d 766*, 776 (8th Cir. 2003).

[43]*Id.*, at 775.

[44]*Id.*

[45]*Id.*

[46]Doc. No. 50.

of fall protection rules.[47] Standing alone, evidence that managers in the past have applied rules differently from the present manager does not demonstrate discriminatory motive.

The remainder of Lipkins's arguments do little to support his contention of racial discrimination. For example, Lipkins offers evidence that the Cardinal Rules were enforced more leniently, or not at all, before Lipkins's termination. But, Lipkins has not has not presented evidence that the rules were enforced more leniently in a discriminatory manner -- that is, leniency only to the advantage of white employees.[48] Similarly, Lipkins argues that he did not know of the 3M Cardinal Rules and that, previous to the incident, management had him sign papers to show he had been trained on the rules even though he had not been.[49] Here again, though, Lipkins has not presented evidence connecting this alleged poor business decision to racially discriminatory motives. Finally, Lipkins variously argues that 3M's termination procedures have subjective components, which, in this case, were wielded against him. That Lipkins's termination may have involved subjective and unfair rule-application, however, does not automatically demonstrate that the decisions made were discriminatory.[50]

---

[47]Doc. No. 60. Lipkins's papers go on to describe other white employees allegedly treated more favorably than African American workers, but none of those examples detail -- in any way that I can decipher -- how those employees are similar in all relevant respects to Lipkins, and most of the given examples are plainly dissimilar to Lipkins in many relevant respects.

[48]To the extent Lipkins attempts to rely on portions of his affidavits submitted along with his papers, he has not pointed out any competent evidence within those affidavits establishing that a white employee has been punished less severely while Cantrell was in charge.

[49]Doc. No. 60.

[50]See *Dixon v. Pulaski County Special Sch. Dist.*, 578 F.3d 862, 870 (8th Cir. 2009) ("'[P]retext' . . . must be read as shorthand for indicating that a defendant's proffered . . . explanation . . . is [not] merely false in some way.").

This is not a case where 3M is alleged to have discriminatorily failed to follow its policy manual; rather, Lipkins's complaint and papers are based on allegations that 3M strictly followed its safety policies in terminating him, but that it should not have done so. "Federal courts do not sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."[51] "Employers are free to make employment decisions based upon mistaken evaluations, personal conflicts between employees, or even unsound business practices."[52] "[M]ere contentions" that supervisory employees "connived" to set up an employee for discharge are not sufficient to establish pretext or discriminatory motive when the employee presents no evidence to support the discriminatory contention."[53] In other words, even if Lipkins's affidavits and deposition testimony were sufficient to show that 3M's explanation for his termination is somehow false or incorrect, or that 3M unfairly imposed safety rules on some employees, or made various poor personnel decisions along the way, this does not count as sufficient evidence that 3M's explanation is a pretext for *racial* discrimination.[54]

Because Lipkins has failed to present evidence demonstrating a genuine issue of material fact on pretext, summary judgment is GRANTED and judgment entered in favor of 3M on Lipkins's adverse employment action discrimination claims.

---

[51]*Edmund v. MidAmerican Energy Co.*, 299 F.3d 679, 686 (8th Cir. 2002)

[52]See *Dixon,* 578 F.3d at 870.

[53]*Al- Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1037 (8th Cir. 2005).

[54]*Id.*

14

**CONCLUSION**

For the reasons set out above, 3M's request for summary judgment is GRANTED and judgment is entered in favor of 3M on all of Lipkins's claims, and Plaintiff's Motion to Substitute Affidavit (Doc. No. 66) is GRANTED.

IT IS SO ORDERED this 26th day of August, 2010.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE